THE BOARD OF EDUCATION OF BUNCOMBE COUNTY v. H. E. WALTER, AUDITOR OF BUNCOMBE COUNTY, AND COUNTY ACCOUNTANT.

(Filed 12 February, 1930.)

1. **Schools and School Districts D b—School system should be guarded from partisan strife.**

Under the constitutional provisions and the statutes enacted with regard to the subject, it is the policy of this State to guard with jealous care its school system from partisan strife.

2. **Schools and School Districts C a — County Commissioners may not usurp right of board of education to purchase its supplies.**

The board of education of a county is required in its large discretion to provide suitable supplies for the public schools of the county out of funds provided by taxation by the county commissioners in the manner prescribed by statute, and when funds have been provided as the statutes direct the purchases by the county board of education within its appropriation are to be paid upon its voucher out of the funds so appropriated, and the board of county commissioners may not usurp the power of the board of education to make such purchases under a resolution consolidating purchases of supplies for all departments of the county government under the provisions of chapter 146, Public Laws of 1927, the county board of education not being a department of the county government within the intent and meaning of the act. 3 C. S., 5585, 5586, 5595, 5617.

3. **Same—Mandamus will lie to compel county accountant to approve purchases made by authorized agent of board of education.**

Where the board of education of a county has issued warrants for the payment of supplies purchased for the public schools of the county out of funds duly appropriated for the purpose by the board of county commissioners as the statutes provide, it is the duty of the county accountant to approve them for payment, and upon his refusal to do so *mandamus* will lie. Public Laws of 1927, ch. 146, sec. 3.

APPEAL by defendant from *Finley, J.,* at November Term, 1929, of BUNCOMBE. Affirmed.

The court below found the following facts:

"1. That the board of education is a body corporate, and that Albert Teague, J. T. Roberts, Jno. A. Goode, Claude Felmet and M. J. West, were elected members of said board by virtue of chapter 180, Public Laws, 1929.

2. That defendant, H. E. Walter, is the duly elected and qualified auditor of Buncombe County, and by virtue of the Public Laws, 1927, is county accountant.

3. That the board of education is vested with such power and authority as is conferred upon it by chapter 95, of the Consolidated Statutes of North Carolina, and the laws amendatory thereof, Public and/or Public-Local and/or Private acts.

4. That on 23 May, 1929, said board undertook to delegate to one Doc Roberts power and authority to make all purchases of school supplies as shown in the complaint, and performance of various and sundry duties as shown in the complaint, all the supplies purchased by him being approved as shown in finding No. 7.

5. That, on the 3d day of ............... , 1929, the board of county commissioners for Buncombe County elected L. D. Maney as the purchasing agent, through whom all supplies for the county should be purchased, and on 26 July, 1929, pursuant to chapter 91 of the Public Laws of 1927, designated the said Maney as purchasing agent of Buncombe County, to purchase all supplies for the county government of Buncombe County, including supplies of every kind used in the operation of the school system of said county. (Exhibit A, complaint.)

6. That on 22 July, 1929, the board of county commissioners of Buncombe County duly adopted the annual appropriation resolution for public schools required by section 8 of the County Fiscal Control Act, and said appropriation was divided into three classes, to wit: Current expense fund, $935,553.50; capital outlay fund, $49,696.50; debt service fund, $131,676.75—total, $1,116,926.75.

7. That there was presented by plaintiff to the county auditor and accountant a voucher or warrant, dated 8 August, 1929, drawn upon the treasurer of Buncombe County, signed by the chairman of the board of education, and by the secretary of said board, payable to the order of Glasgow, Stuart & Company, for the sum of $9.30, another voucher or warrant of similar purport and intendment, drawn to the order of the Beaman Lumber Company, for $7.40; another warrant or voucher of similar purport and intendment, dated 9 August, 1929, payable to the order of the Turner Auto Company, for the sum of $10.25, and another warrant or voucher, of similar purport and intendment, dated 16 August, 1929, payable to the order of J. M. Westall & Company, for the sum of $53.20. All of the foregoing represented supplies purchased by the said Doc Roberts aforesaid, the purchases being approved by the board of education of Buncombe County.

7. That the said vouchers aforesaid were presented to the defendant, as auditor and county accountant, pursuant to the provisions of chapter 146, Public Laws 1927, for his endorsement on the vouchers and warrants, and the requisitions signed by the said Roberts attached thereto, and the said Walter refused to endorse either the warrants or the requisitions for the reason that said supplies were not properly purchased through the purchasing agent designated by the county and did not constitute valid obligations.

8. That on 15 October, 1929, a requisition and warrant was presented to the defendant for the sum of $90, payable to the Asheville Battery

Company, for supplies purchased by the said Roberts, and defendant refused to make any endorsement thereon, for the same reason as he had refused to endorse the other vouchers, warrants and requisitions.

The court being of the opinion that the board of education of Buncombe County is a part of the State-wide system of education, and not a part of the county government, and not a department of the county government, and that chapter 91, Public Laws, 1927, has no application to, and was not intended to apply to acts of the board of education in any manner whatsoever:

It is, upon motion of attorneys for the plaintiff, considered and adjudged, that the said refusal of the defendant as county auditor and accountant, to make the endorsements required by sections 15 and 16 of the County Fiscal Control Act, on all requisitions for the purchase of supplies and materials, and warrants or vouchers in payment thereof, as set forth in the complaint, is unlawful and unwarranted; and it is further ordered and adjudged, that the said H. E. Walter, as county auditor and accountant, be and he is hereby directed and required to make the endorsements specified in said act on all the aforesaid warrants or vouchers and requisitions for materials and supplies purchased by Doc Roberts or otherwise for the plaintiff, in connection with the public school system of Buncombe County, and within the appropriations made therefor, when the same have been presented to him by the plaintiff or its duly authorized officers and agents, properly signed and executed.

It is further ordered and adjudged, that a writ of mandamus is hereby ordered to be issued by this court, directed to the defendant, requiring him to do and perform the matters and things required of him in this decree, and the clerk of this court is directed to cause a certified copy of the said writ of mandamus to be served upon the defendants.

It is further ordered and decreed, that the plaintiff have and recover of the defendant the costs of this action to be taxed by the clerk."

*Chas. N. Malone, Zeb. F. Curtis, Zeb. Nettles and S. G. Bernard for plaintiff.*
*Don C. Young and Merrimon, Adams & Adams for defendant.*

CLARKSON, J. The questions involved (1) Is the board of education of Buncombe County a department of the county government within the meaning of chapter 91, Public Laws 1927? We think not. (2) Is the board of education of Buncombe County a separate and distinct corporation and a part of the State-wide system of education? There is a dual relationship. We do not think it necessary to set forth to any great extent the constitutional provisions and the acts of the General Assembly dealing with the powers and duties of the board of education and the

board of county commissioners. It is sufficient to say, from a careful examination of the Constitution and acts of the General Assembly, that it has been the policy of this State to guard with jealous care its school system to a great extent free from partisan strife.

Chapter 91, Public Laws 1927, the title is "An act to provide improved methods of county government." The preamble, in part: "Whereas, in the organization of the county government it is intended that the board of county commissioners shall be the central governing body, with the right to supervise and control the different departments of the county government, to levy taxes, and to control the finances of the county."

Section 12 of the act, in part, is as follows: "It shall be the duty of the board of commissioners to provide for the purchasing of supplies for the different departments of the county government," etc. There is nothing said in this act in reference to the board of education.

Chapter 95, Michie N. C. Code, 1927, Anno., under "Education," gives the incorporation of the *State Board of Education* and its powers, responsibilities and duties. C. S., 5394, *et seq.* It also gives the incorporation of the *County Board of Education* and its powers, responsibilities and duties. C. S., 5410, *et seq.* Large discretion is given the county board of education in the direction and supervision of the school system. C. S., 5474: "It is the duty of the county board of education to provide suitable supplies for school buildings under its jurisdiction, such as window shades, fuel, chalk, erasers, blackboards, and other necessary supplies, and provide standard high school with reference books, library, maps and equipment for teaching science, and the teachers and principal shall be held responsible for the proper care of the same during the school term." This, and other sections, give the board the right to purchase supplies and do all that the vouchers or warrants indicate, in this action they did do. See *Wiggins v. Board of Education, ante,* 301.

C. S., 5585, is as follows: "It shall be the duty of the county board of education of each county to make a fair estimate in accordance with law of the amount necessary to provide a six months school term, and it shall be the duty of the county commissioners of each county to determine and provide the amount necessary to maintain the school six months in accordance with law. And either the members of the county board of education or the members of the board of county commissioners failing to perform their respective duties shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned in the discretion of the court."

C. S., 5586, provides for the State public school fund an equalizing fund for a six months school term, as provided by the Constitution.

C. S., 5595, provides for the "May Budget"; C. S., 5596, contents of the May Budget. This section provides in detail almost every imaginable necessity for an up-to-date school system. 5603, duty of board of county commissioners to provide funds for six months term; 5604, commissioners required to raise full amount; 5608, procedure in cases of disagreement or refusal of county commissioners to levy school taxes.

C. S., Art. 19, under "Education," gives the entire method of how the board of county commissioners shall proceed.

C. S., 5617, in part: "The county board of education shall divide the funds belonging to the county into two classes: (1) those portioned to districts for salaries for instructional service and other regular employees, and (2) those reserved to the county board of education for all other necessary expenses included in the budget under current expense fund, capital outlay fund, and debt service fund. The treasurer shall pay out funds reserved to the county board of education only on warrants signed by the chairman and secretary of said board," etc. See Laws 1929, ch. 180, 201, 245, 274, 323.

Finding of fact (6) in the present case, says: "That on 22 July, 1929, the board of county commissioners of Buncombe County duly adopted the annual appropriation resolution for public schools required by section 8 of the County Fiscal Control Act, and said appropriation was divided into three classes, to wit: Current expense fund, $935,-553.50; capital outlay fund, $49,696.50; debt service fund, $131,676.75; total, $1,116,926.75."

Chapter 146, Public Laws 1927, is known as "The County Fiscal Control Act."

The defendant, H. E. Walter, under said act, section 3, was appointed by the board of county commissioners of Buncombe County as "county accountant."

Section 2 of this act deals with school funds and defines the meaning of the funds as used in the act. (c) Constitutional school maintenance "means the maintenance of schools for the six months term required by State Constitution." (j-3) "County-wide school expenses over and above constitutional school maintenance."

Section 8, subsection (b): "The powers given by the general law to the county board of education and county commissioners jointly, in respect to the determination of the amount to be raised or expended for the maintenance of the six months school term, shall be observed by the county accountant and by the board of county commissioners."

The county commissioners passed a resolution consolidating purchases of supplies for all departments of county government and attempted, under chapter 91, Public Laws of 1927, to usurp this duty heretofore put by law on the board of education of Buncombe County.

That act, as seen, is entitled "An act to provide improved methods for county government." Nowhere in the act in the school system mentioned, although the board of county commissioners and the board of education are by law made separate corporations. If intended to apply to the board of education, how easily so important a function of government as the school system could have been mentioned. *Expressio unius est exclusio alterius.* The law in existence placed this duty on the board of education. The county accountant, under the resolution of the board of county commissioners refused to pay certain bills for supplies which the board of education had purchased, through its duly constituted agent, and proper warrants and orders were made for same, in accordance with the "May Budget." The "May Budget" appropriation was agreed to by the dual bodies, the board of education and the board of county commissioners, and these funds were segregated for the purpose heretofore mentioned for the county schools. These orders and warrants by the proper officials of the board of education, were within the appropriation of the "May Budget," and in accordance with section 8, Public Laws 1927, ch. 146. That being so, it was the duty of the defendant, the county accountant, to approve them. Defendant had no autocratic power under the act to refuse to approve the orders or warrants for supplies. Public Laws 1927, ch. 146, secs. 15 and 16.

It is the duty of the courts to reconcile, if possible, the different acts of the General Assembly, dealing with these matters, and we see no difficulty in this case. *Leonard v. Sink, ante,* 114. Any other holding would create confusion and discord between two bodies of high official dignity, which it goes without saying have the good of their county at heart.

Under our Constitution this Court, in a unanimous opinion, speaking to the subject in *Frazier v. Commissioners,* 194 N. C., at p. 61-2, said: "The Constitution of North Carolina does provide—and its provisions in that respect have been held mandatory—that the General Assembly shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State between the ages of six and twenty-one, Article IX, section 2; and that to accomplish this end, the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year, Article IX, section 3. It cannot be too often emphasized that the controlling purpose of the people of North Carolina, as declared in their Constitution, is that a State system of public schools shall be established and maintained—a system of schools supported by the State, and providing for the education of the children of the State—and that ample power has been conferred upon the General Assembly to make this pur-

pose effective. In *Tate v. Board of Education*, 192 N. C., 516, this Court has said: 'It is, however, fully within the power of the General Assembly, because of the duty imposed upon it by the Constitution, 'to provide by taxation and otherwise for a general and uniform system of public schools,' to authorize and direct the respective counties of the State, as administrative units of the public school system, or as governmental agencies employed for that purpose by the General Assembly, to provide the money for such expense by taxation and otherwise. *Lovelace v. Pratt*, 187 N. C., 686; *Lacy v. Bank*, 183 N. C., 373.' " *Hartsfield v. Craven County*, 194 N. C., 358; *Hall v. Commissioners*, 194 N. C., 769, 195 N. C., 367; *Owens v. Wake County*, 195 N. C., 132.

We think the court below properly ordered that a writ of mandamus issue. The judgment of the court below is

Affirmed.