W. O. EVANS, ON BEHALF OF HIMSELF AND OTHER TAXPAYERS OF MECKLEN-
BURG COUNTY, v. MECKLENBURG COUNTY AND H. B. FOWLER,
W. B. BLYTHE, H. W. HARKEY, W. H. HALL, AND B. J. HUNTER,
MEMBERS OF THE BOARD OF COMMISSIONERS.

(Filed 10 January, 1934.)

1. **Schools and School Districts A d—Former special districts held abol-
ished except for levying taxes as provided by ch. 562, Laws of 1933.**

An act creating a special charter school district and providing among
other things that an issue of bonds for school sites, buildings, etc., should
first be submitted to a vote of the electors of the district, is repealed
by a later general act, chapter 562, Public Laws of 1933, enacted to pro-
vide a uniform State system of public schools in the interest of economy
and better management, which provides a different method for the
issuance of bonds for such purposes and expressly repeals all conflicting
laws, and provides that such special charter and tax districts should
levy taxes for school-operating purposes only as provided in the general
act, and where such district has been constituted an administrative unit
by the State School Commission, it may not be successfully maintained
that a bond issue for school sites, buildings, etc., in such district must
first be submitted to the voters of the district in accordance with the
provisions of the former law.

2. **Counties E b—Maintenance of school term is county expense and it
may issue bonds necessary therefor in one of its districts.**

A county is an administrative unit of the State in our State-wide
public school system, and under mandate of Art. IX, sec. 3, a statute
requiring a county to maintain at least a six months school term in each
of its school districts and to provide the necessary funds therefor by
taxation or otherwise, is valid, and is specifically provided for in sec. 8
of the County Finance Act, and under the statutes a county is authorized
to issue bonds necessary to the maintenance of the constitutional school
term in one of its districts without the necessity of submitting the issu-
ance of the bonds to a vote, and expenses necessary to the maintenance
of the school term in a district include school sites, buildings, a necessary
auditorium and shop for a technical high school, and sewage disposal
plants, together with toilet facilities, necessary to the health of attending
scholars in a rural school.

APPEAL by plaintiff from *Hill, Special Judge,* at Special December
Term, 1933, of MECKLENBURG. Affirmed.

The plaintiff brought suit to enjoin the defendants from issuing bonds
of Mecklenburg County in the sum of $438,200, of which it is proposed
to use $400,000 in erecting school buildings and additions to school
buildings in the city of Charlotte on sites owned by the city or to be
purchased, and $38,200 in making additions to and improvements in
certain rural school buildings. Pleadings were filed, trial by jury was
waived, and the court found the following facts:

1. . . .

2. . . .

3. The trustees of the Charlotte City Administrative Unit adopted a resolution on 22 November, 1933, requesting the board of county commissioners for Mecklenburg County to issue bonds in the sum of $400,000 for the erection of school buildings, additions to school buildings and the purchase of school sites within the limits of the city of Charlotte, and said resolution provides that said board found as a fact that the issuance of said bonds was necessary to carry on the constitutional six months school term in the city of Charlotte.

4. The county board of education for Mecklenburg County adopted a resolution on 22 November, 1933, requesting the board of commissioners for Mecklenburg County to issue bonds in the sum of $438,200 for the erection of school buildings, additions to school buildings and purchase of school sites in the county of Mecklenburg, and said resolution provides that the board found as a fact that the issuance of said bonds was necessary to carry on the constitutional six months school term in Mecklenburg County.

5. On 22 November, 1933, a resolution or bond order was introduced by one of the members of the board of commissioners for Mecklenburg County and said resolution or bond order was finally passed by said board on 4 December, 1933; and said resolution or bond order provided that the board of commissioners for Mecklenburg County found as a fact that the issuance of said bonds in the sum of $438,200 was necessary to carry on the constitutional six months school term in Mecklenburg County.

6. All of the provisions of chapter 21, Public Laws, 1927, known as the County Finance Act, and acts amendatory thereof and supplemental thereof, which provides for the issuance of bonds by counties for the erection of school buildings, additions to school buildings and purchase of school sites, have been complied with by the board of commissioners for Mecklenburg County.

7. The issuance of said bonds and the expenditure of the funds derived from the sale of said bonds is a necessary expense; it is necessary to issue said bonds and to use the funds to be derived from the sale thereof in order for the public schools of Mecklenburg County to be maintained as is required by the Constitution of the State of North Carolina.

8. In the issuance of said bonds the above named defendants are acting as an administrative agency of the State of North Carolina and are empowered by the General Assembly to discharge the duties imposed upon them by the Constitution to provide a state system of public schools according to the provisions of said Constitution.

9. Chapter 342, Private Laws, 1907, and acts amendatory thereof, created a special charter district coterminous with the corporate limits of the city of Charlotte, with full power therein granted to purchase sites and to provide necessary school buildings to meet the needs of the scholastic population of the city of Charlotte.

10. Since the adoption of chapter 562, Public Laws, 1933, by the General Assembly, the State School Commission had directed that the city of Charlotte be set up as a city administrative unit for the purpose of operating its schools, as provided by chapter 562, Public Laws, 1933.

11. The total bonded indebtedness for schools in Mecklenburg County, including the bonds authorized by the order of the board of commissioners, under date of 4 December, 1933, does not exceed five per cent of the assessed valuation of taxable property in Mecklenburg County, as shown by a financial statement made a part of this record.

Upon the foregoing facts the trial court adjudged that the defendants have right in law to issue and sell the proposed bonds and to levy a tax for their payment and denied the plaintiff's prayer for injunctive relief. The plaintiff excepted to the judgment and appealed.

*J. L. DeLaney for plaintiff.*
*Stancill & Davis and Bridges & Orr for defendants.*

ADAMS, J. By an act of the General Assembly the city of Charlotte was made a special charter district and the board of school commissioners was given exclusive control of the public school system of the city, including authority to purchase sites and to provide such buildings and equipment as were essential to the efficient operation of its public schools. Private Laws, 1907, chap. 342, sec. 197, *et seq.* Subsequent legislation provided machinery by which in special charter districts elections might be held, bonds might be issued, and taxes might be levied for payment of the bonds, principal and interest. Public Laws, 1923, chap. 136, sec. 263; Public Laws, 1924, Extra Session, chap. 121; Public Laws, 1927, chap. 109. The plaintiff claims that the statute creating the special charter district, whose boundaries were coterminous with those of the city, has never been repealed as provided by the Public Laws of 1923, chap. 136, sec. 157; that bonds can be issued only when approved by an election held as prescribed; and that the county is without authority to issue bonds or to levy a county tax for the erection of school buildings on sites owned within the corporate boundaries. This in effect is the postulate upon which the plaintiff rests his argument that the defendants should be enjoined from issuing and selling the proposed bonds and from levying the tax requested by the city school commissioners and the county board of education.

In reply the defendants say that the General Assembly at the session of 1933 changed and transformed the public school system to such extent that the statutes invoked by the plaintiff are not decisive of the pending questions. Public Laws, 1933, chap. 562. The asserted purpose of the latter act is to promote efficiency in the organization and economy in the administration of the public schools, and to provide for the operation of a uniform system of schools for the entire State. This signifies, as indeed the act declares, that the State has adopted a policy of supporting its public schools and has consequently in part modified and in part abolished the former system.

All the powers and duties conferred by the recent act and those previously conferred by law upon the State Board of Equalization are now vested in the State School Commission. Public Laws, 1927, chap. 256; Public Laws, 1929, chap. 245; Public Laws, 1931, chap. 430; Public Laws, 1933, chap. 562, sec. 2. This commission may in the exercise of its sound judgment suspend the operation of schools in any county or district for a part or all of the last forty days of the consolidated term. It shall classify each county as an administrative unit and with the advice of the county board of education shall redistrict each county. Any newly constituted district having the requisite school population in which there is a special charter school may with the approval of the commission be classified as a city administrative unit to be dealt with by the State school authorities in like manner with county administrative units; and if an existing special charter district is included in a district as determined by the commission, the trustees of the special charter district shall be retained as the governing body.

These and other provisions of the act of 1933 (to which we need not particularly advert) including the clause which repeals all conflicting public, public-local, and private laws, indicate a legislative intent to annul or to subordinate to the new law all statutes relating to the public schools which were in effect at the time of its enactment and to establish a uniform system under which all the public schools of the State shall be conducted. To the accomplishment of this purpose it was found necessary to abrogate certain school districts as appears in the following clauses of the fourth section: "All school districts, special tax, special charter or otherwise, as now constituted for school administrative or for tax levying purposes are hereby declared nonexistent and it shall be unlawful for any taxes to be levied in said districts for school operating purposes except as provided in this act: *Provided,* that nothing herein contained shall be construed to prevent the tax-levying authorities in any administrative unit, with the approval of the State School Commission, from levying taxes to provide the necessary funds for teaching vocational agriculture and home economics in such unit when said

tax-levying authorities are now authorized by law to do so and are now levying taxes for such purposes."

What are the other taxes "provided in this act?" In section 4 it is enacted that in redistricting a county, if a territorial district or unit in which a bond tax has been voted is divided or consolidated or otherwise integrated with a new district and thereby abolished as a school district, such unit shall be maintained until all taxes necessary for the payment of its bonds shall have been levied and collected; but the indebtedness of a special charter district or special tax district may be taken over by the county. Section 17 provides for an election to determine whether, at the instance of the county board of education in any county administrative unit or the board of trustees in any city administrative unit, with the approval of the tax-levying authorities in the county or in the city administrative unit and of the State School Commission, a tax shall be levied for the operation of schools of a higher standard than those for which provision is made by State support. Reference is made also to taxes levied under the former law and remaining unpaid. It will be observed, then, that none of these clauses aids the plaintiff and that the force of his argument must be determined by the construction of the first paragraph of section four.

This paragraph annuls all school districts which under the former law were constituted either for the general purpose of school administration or for the specified purpose of levying taxes—the single exception being the power to levy taxes for school operating purposes "as provided in this act." With this exception the preceding alternative terms are all-including. By virtue of the act of 1933 the State School Commission has constituted the city of Charlotte a city administrative unit, and the special charter district being nonexistent is without authority to perform the functions upon which the plaintiff insists.

The county of Mecklenburg is an administrative unit in the public school system. The Constitution directs that each county of the State shall be divided into a convenient number of districts in which one or more public schools shall be maintained at least six months in every year. Art. IX, sec. 3. By reason of this mandate it is within the power of the General Assembly to authorize and direct the counties of the State as administrative units or governmental agencies to provide the necessary funds by taxation or otherwise. *Tate v. Board of Education,* 192 N. C., 516; *Frazier v. Comrs.,* 194 N. C., 49. Specific authorization for this purpose is found in section 8 of the County Finance Act: "The special approval of the General Assembly is hereby given to the issuance by counties of bonds and notes for the special purposes named in this section, and to the levy of property taxes for the payment of such bonds and notes and interests thereon." Among the enumerated purposes are

the erection and the purchase of school houses, which by the express terms of the statute, include purchase of the necessary land and in the case of buildings provision for necessary equipment and facilities. Public Laws, 1927, chap. 81, sec. 8.

The resolutions of the county board of education and of the board of county commissioners include in the proposed improvements an auditorium for West Charlotte High School, a new shop for the Technical High School, and for Hoskins Rural School and Oakdale Rural School sewage disposal plants, together with toilet facilities for the latter institution. As to these we are of opinion that the auditorium and the shop are component parts of a general system and in a modern school are often no less serviceable than rooms for classes, and that provision for sanitation is a measure suitable and frequently indispensable to the promotion and preservation of the health of the pupils and to the general efficiency of the school. The order of the board of county commissioners is within the contemplation of the recent act. Cognate questions arising under the former law are discussed in *Reeves v. Board of Education,* 204 N. C., 74, which accords in theory with the conclusion herein announced. The judgment of the Superior Court is

Affirmed.