## BOARD OF EDUCATION OF ONSLOW COUNTY v. THE BOARD OF COUNTY COMMISSIONERS OF ONSLOW COUNTY.

(Filed 14 April, 1954.)

**1. Estoppel § 3—**

Where a county board of education submits to the jurisdiction of the Superior Court by excepting to and appealing from the decision of the arbitrator in proceedings under G.S. 115-160, the county board of education will not be heard on further appeal to the Supreme Court to challenge the findings of the Superior Court on the ground that there was no *bona fide* disagreement between the board of education and the board of county commissioners and that the county commissioners arbitrarily reduced the budget prepared and presented to it.

**2. Appeal and Error § 40d: Schools § 9f—**

Where the board of education and board of county commissioners are unable to agree on the amounts set up in the school budget to be provided by county funds, and the procedure prescribed by G.S. 115-160 is invoked, the findings of the Superior Court on appeal from the decision of the clerk of the Superior Court acting as arbitrator, are conclusive unless arbitrary or in abuse of statutory duty.

**3. Same—**

Where, on appeal to the Superior Court under the procedure prescribed under G.S. 115-160, the Superior Court makes findings of the amounts necessary for certain items of the capital outlay budget and the current expense budget in sums less than that requested by the county board of education, but there is no showing of present necessity for the amounts budgeted as compared with the amounts allowed, *held:* The record fails to show that the findings of the Superior Court are arbitrary and, therefore, such findings are conclusive, the estimates of the board of education not being determinative.

*Semble:* G.S. 115-160 and 115-161 are not superseded by the School Machinery Act, G.S., 115-347, *et seq.*, but the statutes must be construed *in pari materia* and G.S. 115-160 and 115-161 still obtain as to all items of the budget for which the county commissioners remain under duty to provide by taxation. The policy of the law in regard to the maintenance and support of the uniform system of public schools for the entire State, the items of the budget provided for by the State and the items for which the county commissioners must or may provide by *ad valorem* taxes, reconciliation of inconsistent provisions of the several statutes, and the repeal of repugnant provisions which may not be reconciled by the last enacted provision regardless of its position in the code, discussed by MR. JUSTICE BOBBITT.

APPEAL by Board of Education of Onslow County from *Stevens, J.,* October Term, 1953, of ONSLOW.

This is neither a civil action nor a special proceeding. The appeal is from judgment entered as the last step of the proceedings set out below:

Onslow County has only one administrative unit, the County Administrative Unit. The Board of Education prepared and adopted a Current Expense Budget and a Capital Outlay Budget for the 1953-54 school year. The Current Expense Budget was set up under the six captions set forth in G.S. 115-157 (a), to wit: (1) General Control; (2) Instructional Service; (3) Operation of Plant; (4) Maintenance of Plant; (5) Fixed Charges; and (6) Auxiliary Agencies. Items in the Capital Outlay Budget were grouped under four general headings, to wit: (1) New Buildings and Grounds; (2) Old Buildings and Grounds; (3) Books; and (4) Transportation Equipment and Facilities.

The total amounts requested were: For Current Expenses, $128,500.00; for Capital Outlay, $62,000.00. Upon submission to the County Commissioners, they eliminated and reduced items, approving: For Current Expenses, $97,700.00; for Capital Outlay, $34,000.00.

Being unable to compose their differences in joint session, the two boards followed the procedure set forth in G.S. 115-160. The Clerk of the Superior Court was called in as arbitrator. After hearing testimony, the arbitrator's decision was: For Current Expenses, $111,700.00; for Capital Outlay, $45,000.00. The Board of Education appealed to the Superior Court, specifically excepting in each instance where an item set up in its budget had been eliminated or reduced. Thereupon, a jury trial having been waived, the presiding judge heard the testimony of I. B. Hudson, County Superintendent, J. P. Brown, Chairman of the Board of Education, and Cameron P. West, Principal of the Jacksonville Schools, offered by the Board of Education, and the testimony of Harry B. Moore, Chairman of the Board of County Commissioners, offered by the County Commissioners, and upon this testimony, and the exhibits offered by the Board of Education, made findings of fact, wherein the amounts approved by the court were: For Current Expenses, $112,400.00; for Capital Outlay, $47,000.00. Thereupon, the court entered judgment that the County Commissioners of Onslow County *levy a tax* "sufficient in amount to provide a current fund in the amount of $112,400.00; a capital outlay fund in the amount of $47,000.00, and a debt service fund in the amount of $74,425.00, for the use and benefit of the Board of Education of Onslow County for the current fiscal year, beginning as of July 1, 1953, and to be used, expended and administered by the said Board of Education in the operation and maintenance of the said schools in the manner prescribed by law."

The Board of Education appealed, excepting to each finding of fact not in accord with the budget prepared and presented by it and to the court's failure to find that all items in the amounts set out in its budgets were necessary for the maintenance of the Onslow County Schools. An addendum to the record sets forth that the Board of County Commission-

ers assigns errors, viz.: (1) to the refusal of the court to dismiss the appeal of the Board of Education, (2) to the judgment, and (3) to the judgment referred to in the next paragraph hereof; but no entries of appeal by the County Commissioners appear in the record.

On account of the delay occasioned by the appeal, the court below, in accordance with G.S. 115-161, entered an order requiring the County Commissioners to provide funds for Debt Service in the amount of $74,425.00; and, in addition, $148,857.85 for use in the payment of the Current Expenses in the operation of the public schools of the County for the fiscal year beginning July 1, 1953, being the amount expended for this purpose during the preceding fiscal year.

*Jones, Reed & Griffin for plaintiff, appellant.*
*Carl V. Venters and E. W. Summersill for defendant, appellee.*

BOBBITT, J.  The Board of Education, by exceptive assignments of error, challenges the court's findings of fact, insisting that the court should have found from the evidence that $128,500.00 was necessary as a Current Expense fund; that $62,000.00 was necessary as a Capital Outlay fund; and that each item in its budget and included in these totals was necessary for the maintenance of the public schools of the county for the fiscal year beginning July 1, 1953.  The Board of Education, on exceptive assignments of error, contends further that there was no *bona fide* disagreement between the two Boards as contemplated by G.S. 115-160; that the County Commissioners arbitrarily reduced the budget presented; and that the only evidence before the court was that the budget as presented by the Board of Education represented the amounts necessary for the maintenance of the schools for said fiscal year.

It should be noted that the appeal presents no controversy relating to the amount provided as Debt Service funds.

The statutory procedure invoked, G.S. 115-160, expressly provides that when the Board of Education and the County Commissioners are unable to agree on the amounts set up in the budgets, "the clerk of the superior court shall act as arbitrator upon the issues arising between said two boards, and shall render his decision thereon within ten days.  But either the county board of education or the board of county commissioners shall have the right to appeal to the superior court within thirty days from the date of the decision of the clerk of the superior court, and it shall be the duty of the judge hearing the case on appeal to find the facts as to the amount of the current expense fund, the capital outlay fund, and the debt service fund, *which findings shall be conclusive,* and shall give judgment requiring the county commissioners to levy the tax which will provide the amount of the current expense fund, the capital outlay fund and

the debt service fund, *which he finds necessary* to maintain the schools in every school district in the county." (Emphasis added.) Having invoked the jurisdiction of the Superior Court by exceptions to and appeal from the decision of the arbitrator, which in turn is the basis of the jurisdiction of this Court upon appeal, the Board of Education cannot be heard now to challenge the findings and judgment of the court below on the ground that there was no *bona fide* disagreement between the two Boards or on the ground that the County Commissioners arbitrarily reduced the budgets prepared and presented by it. Upon appeal, this Court is limited to a consideration of assigned errors of law in the proceedings in the Superior Court. *Worsley v. Rendering Co.,* 239 N.C. 547, and cases there cited. By the express terms of the statute, the findings of the Superior Court judge are *conclusive.* Hence, the findings of the court below must stand, the record failing to disclose that these findings were made arbitrarily or in abuse of statutory duty.

The Board of Education's budget for Current Expenses called for a total of $128,500.00 as compared with the findings of fact by the court below of $112,400.00, a difference of $16,100.00. The Board of Education's budget for Capital Outlay called for a total of $62,000.00 as compared with the findings of fact by the court below of $47,000.00, a difference of $15,000.00 Consideration of the individual items accountable for these differences in the totals will clarify the questions presented for consideration.

## CAPITAL OUTLAY BUDGET

In this budget, three items make up the difference of $15,000.00. The court below did not allow an item of $10,000.00 for new buildings. The court below allowed $2,500.00 for new library books in lieu of the requested $5,000.00. The court below allowed $2,500.00 for new textbooks in lieu of the requested $5,000.00.

While the Board of Education deemed it advisable to have the $10,000.00 budgeted for new buildings, no present necessity therefor or intended use thereof was clearly shown. Conceding, without deciding, that the items for new library books and new textbooks were proper items in a Capital Outlay budget under G.S. 115-157 (b), (see G.S. 115-279), no present necessity for the amounts budgeted as compared with the amounts allowed was clearly shown.

## CURRENT EXPENSE BUDGET

For reasons soon to be apparent, we consider the several items making up the difference of $16,000.00 with reference to the six captions of this budget.

*General Control:* The court below did not allow an item of $3,000.00 for Superintendent's Aide. However, the court below increased the item, Travel—Superintendent, from the budgeted amount of $500.00 to $600.00.

*Instructional Service:* The court below allowed for the item, Vocational Agent—Travel, $2,400.00 in lieu of the requested $2,700.00. The court below allowed for the item, Clerical Assistants, $9,300.00 in lieu of the requested $10,000.00. However, the court below increased the item, Home Economist—Travel, from the budgeted amount of $300.00 to $600.00.

*Operation of Plant:* All items under this caption were allowed by the court below in the amounts requested.

*Maintenance of Plant:* The court below allowed for the item, Repairs to Buildings and Grounds, $20,000.00 in lieu of the requested $25,000.00. The court below allowed for the item, Repairs and Replacements—Furniture and Instructional Apparatus, $7,500.00 in lieu of the requested $10,000.00. The court below allowed for the item, Repairs and Replacements—Heat, Light and Plumbing, $7,000.00 in lieu of the requested $10,000.00.

*Fixed Charges:* All items under this caption were allowed by the court below in the amounts requested.

*Auxiliary Agencies:* The court below allowed for the item, Libraries, $8,000.00 in lieu of the requested $10,000.00.

Except as indicated above, the court below allowed all items in the amounts requested.

The evidence offered by the Board of Education stresses generally the increase in the number of buildings and pupils in the schools of the Onslow County Administrative Unit. Emphasis is placed upon evidence to the effect that in the school year, 1952-53, much larger amounts were actually expended, particularly for the items for Maintenance of Plant, than the amounts set up for the corresponding items in its 1953-54 budget. It was explained that this was possible because of a balance of some $60,000.00 carried over from the preceding year and no substantial amount was available for 1953-54 other than that provided by the budget. The County Superintendent, Mr. Hudson, emphasized the desirability to North Carolina and to the local community of having a school system of which they could be proud, with a reputation for progressiveness, with improved equipment and facilities and suitably maintained. We appreciate fully his interest and his efforts looking to raising the standards of the Onslow schools. However, the evidence is vague, if existent, as to detail proposals in reference to the expenditure of the budgeted amounts for Maintenance of Plant. The larger expenditures for repairs and replacements during 1952-53, in the absence of detail as to present needs, is a fact from which the inference could be drawn that there was less need

for expenditures for these purposes in 1953-54. Be that as it may, no present necessity for the amounts budgeted as compared with the amounts allowed was clearly shown; and we cannot say that the court below made findings of fact arbitrarily or in abuse of statutory duty. Of course, it is the responsibility of the County Commissioners to provide the necessary funds for Maintenance of Plant and Fixed Charges as well as for Capital Outlay and Debt Service. But the estimates of the Board of Education are not determinative. Should actual deficiency be disclosed, the County Commissioners in the next year would be confronted by facts and conditions disclosing what was actually necessary rather than an estimate of needs.

Having concluded that the findings of fact by the court below must be regarded as conclusive in respect of these budgets for 1953-54, conceding that the procedure under G.S. 115-160 was in all respects appropriate, perhaps it would be well to refrain from further discussion. However, the County Commissioners, while not appealing from the judgment of the court below, contend in their brief that G.S. 115-160 and G.S. 115-161 are now obsolete, superseded by The School Machinery Act (G.S. 115-347, *et seq.*) ; and that the court below should have dismissed the Board of Education's exceptions to the decision of the arbitrator and its appeal from such decision. While not the basis of decision here, we call attention to the following matters.

It is an understatement to say that the manifold provisions of G.S., Vol. 3A, Ch. 115, present difficulties when an attempt is made to reconcile statutes apparently in conflict in relation to the same subject matter. Evidently, the General Assembly had this in mind when by Resolution 42, Session Laws of 1953, p. 1370, it provided for a commission to study the school laws with a view to making recommendations to the 1955 Session of the General Assembly as to revisions which will eliminate any repugnancies and in general clarify and revise existing laws on the subject. We are concerned here only with a possible "repugnance" relating to procedure relevant to the subject matter of this proceeding.

G.S. 115-157, G.S. 115-160 and G.S. 115-161 bring forward the provisions of Sections 175, 187 and 188, respectively, of Ch. 136, Public Laws of 1923, as amended by Sections 1, 12 and 14, respectively, of Ch. 239, Public Laws of 1927. Without question, these statutes were in force as the law of this State prior to the enactment of Ch. 562, Public Laws of 1933, entitled: "AN ACT TO PROMOTE EFFICIENCY IN THE ORGANIZATION AND ECONOMY IN THE ADMINISTRATION OF THE PUBLIC SCHOOLS OF THE STATE; TO PROVIDE FOR THE OPERATION OF A UNIFORM SYSTEM OF SCHOOLS IN THE WHOLE OF THE STATE, FOR A TERM OF EIGHT MONTHS, WITHOUT THE LEVY OF ANY AD VALOREM TAX THEREFOR."

Prior to the 1933 Act, Sections 187 and 188, Ch. 136, Public Laws of 1923, were discussed in *In re Board of Education,* 187 N.C. 710, 122 S.E. 760, and in *Rollins v. Rogers,* 204 N.C. 308, 168 S.E. 206; and reference thereto was made in *Board of Education v. Walter,* 198 N.C. 325, 151 S.E. 718, and in *Wilkinson v. Board of Education,* 199 N.C. 669, 155 S.E. 562. Since the 1933 Act, we find no case in which these sections are discussed.

Prior to the 1933 Act, each county, in the manner prescribed by Ch. 136, Public Laws of 1923, as amended, was required to provide the support for its schools in compliance with the constitutional mandate; and in so doing budgets were required for Current Expenses, Capital Outlay and Debt Service. The General Assembly appropriated money to constitute "The State Equalizing Fund," which the Board of Education was authorized to apportion so that the burden of counties less able to make the required provision would be to some extent equalized.

By the 1933 Act, an entirely new policy for the operation and support of schools was put into effect; and a uniform system of State-supported operation of public schools for the entire State was adopted. It repealed or subordinated all statutes relating to the public schools in conflict with its provisions. *Evans v. Mecklenburg,* 205 N.C. 560, 172 S.E. 323. One of its primary purposes was the elimination of *ad valorem* taxes as a source of revenue to provide for the operation of the public schools for the constitutional term. See dissenting opinion by *Barnhill, J.* (now *C. J.*), in *Fletcher v. Comrs. of Buncombe,* 218 N.C. 1, 9 S.E. 2d 606. The 1933 Act is the basis and forerunner of the later comprehensive statute, Ch. 358, Public Laws of 1939, which, as amended, is now codified as G.S. 115-347 through G.S. 115-382, being G.S. Ch. 115, Art. 50, entitled, "The School Machinery Act."

G.S. 115-356 provides for the use of State funds for the operation of the public schools as determined by the State Board of Education for items set forth under four headings: 1. General Control; 2. Instructional Service; 3. Operation of Plant; 4. Auxiliary Agencies. It provides further:

"The objects of expenditure designated as *maintenance of plant* and *fixed charges* shall be supplied from funds required by law to be placed to the credit of the public school funds of the county and derived from fines, forfeitures, penalties, dog taxes, and poll taxes, and from all other sources except State funds: Provided, that *when necessity* shall be shown, and *upon the approval* of the county board of education or the trustees of any city administrative unit, the State Board of Education *may approve* the use of *such funds* in any administrative unit to supplement any object or item of the current expense budget, including the supplementing of the teaching of vocational subjects; and in such cases the tax levying

authorities of the county administrative unit shall make a sufficient tax levy to provide the necessary funds for *maintenance of plant, fixed charges,* and *capital outlay:* Provided, further, that the tax levying authorities in any county administrative unit *may* levy taxes to provide necessary funds for teaching vocational agriculture and home economics and trades and industrial vocational subjects supported in part from federal vocational educational funds: Provided, further, that nothing in this sub-chapter shall prevent the use of federal and/or privately donated funds which may be made available for the operation of the public schools under such regulations as the State Board of Education may provide: Provided further, that the tax levying authorities in any county administrative unit *may* levy taxes to provide necessary funds for attendance enforcement, supervision of instruction, health and physical education, *clerical assistance,* and accident insurance for school children transported by school bus: Provided, that nothing in this section be interpreted as repealing the present statutes requiring the State Board of Education's approval of local unit budgets." (Emphasis added.)

In the current expense budget prepared and submitted by the Board of Education to the County Commissioners, the captions for items for which State support is provided are used; and in addition the other two captions set forth in G.S. 115-157 (a), namely, Maintenance of Plant and Fixed Charges. In respect of Fixed Charges, it is noted that the findings of the court are in accord with the Board of Education's budget, namely, $8,600.00. In respect of Maintenance of Plant, the Board of Education's budget called for a total of $45,000.00 as compared with the court's finding of $34,500.00. The testimony of the County Superintendent indicates that fines and forfeitures yield between $48,000.00 and $50,000.00 per year.

When authorized by the qualified voters in a county administrative unit, the supplemental funds made available may be used "in order to operate schools of a higher standard than that provided by State support;" and the procedure with reference to the approval of budgets relating to such local supplements is prescribed. G.S. 115-361, G.S. 115-363.

Nothing in the record indicates that the qualified voters have authorized a local supplement. Hence, the applicable statutory procedure is that set forth in G.S. 115-356. Had the County Board of Education and the State Board of Education approved the use of county school funds derived from fines, forfeitures, etc., for items of Current Expense, then and only then would the County Commissioners be required to levy taxes to provide fully for the items of Maintenance of Plant and Fixed Charges. So far as the record discloses, nothing was done by the Board of Education in conformity to this procedure. Rather, the parties elected to proceed in accordance with the provisions of G.S. 115-160 and G.S. 115-161.

What is the status of G.S. 115-160 and G.S. 115-161? To say that they are obsolete and superseded by the School Machinery Act or that they have been repealed in whole or in part ignores the fact that they were enacted or re-enacted as a part of our statutory law when the General Statutes of 1943 and later when G.S., Vol. 3A, were adopted. (Ch. 99, Session Laws of 1953.) The several sections are to be construed *in pari materia.* If possible, they are to be reconciled and harmonized. If and when confronted by inescapable conflicts and inconsistencies, these must be resolved by the Court as the occasion arises. *Parker v. Anson County,* 237 N.C. 78, 74 S.E. 2d 338. In ascertaining the legislative intent, the judicial approach is well stated in 82 C.J.S., p. 912, Statutes, Section 385 (b), as follows:

"The different sections should be regarded, not as prior and subsequent acts, but as simultaneous expressions of the legislative will; but, where every means of reconciling inconsistencies has been employed in vain, the section last adopted will prevail, regardless of their relative positions in the code or revision. An unnecessary implication arising from one section, inconsistent with the express terms of another on the same subject, yields to the expressed intent, and the two sections are not repugnant. Any rules contained in the code itself for determining which provision is to prevail should be followed in case of conflict. Form must give way to legislative intent in case of conflict."

See also, Sutherland, Statutory Construction, Section 3711; Anno., 12 A.L.R. 2d 423.

Undertaking the task of statutory construction, we note the radical change in the school policy of the State wrought by the 1933 Act. Since then, under The School Machinery Act, the State, rather than the county, has the responsibility for the school program. Under G.S. 115-356 State funds are provided for the items budgeted under the captions (1) General Control, (2) Instructional Service, (3) Operation of Plant, and (4) Auxiliary Agencies. The County Commissioners *are not required* to levy taxes for items under these four of the six captions set forth in G.S. 115-157 (a). True, under G.S. 115-356 the County Commissioners *may* levy taxes for additional *specified* purposes, *e.g.,* for teaching vocational agriculture and home economics and trades and industrial vocational subjects supported in part from federal vocational educational funds, and for attendance enforcement, supervision of instruction, health and physical education, clerical assistance, etc. Moreover, if and when the County Board of Education and the State Board of Education determine that necessity therefor exists, the funds derived from fines, forfeitures and other specified sources, belonging to the county public school fund and ordinarily for use in the payment of items under the captions Maintenance of Plant and Fixed Charges, may be directed for use in supplement-

ing an object or item of the Current Expense Budget for which State funds are provided. When this is done, the duty rests upon the County Commissioners to make a sufficient tax levy to provide the necessary funds for Maintenance of Plant and Fixed Charges.

It would seem, therefore, that whenever the positive duty rests upon the county tax levying authorities to provide the necessary funds the provisions and procedures of G.S. 115-157, G.S. 115-160 and G.S. 115-161 are applicable. No other procedure is indicated to determine differences between the County Board of Education and the County Commissioners. Specifically, this would seem to cover: (1) the Debt Service Budget; (2) the Capital Outlay Budget; (3) two items in the Current Expense Budget, namely, Maintenance of Plant and Fixed Charges, i.e., the deficiency, if any, after application of the county school fund derived from fines, forfeitures, etc., to be provided by ad valorem taxation; and (4) the same two items in the Current Expense Budget, namely, Maintenance of Plant and Fixed Charges, whenever the county school fund derived from fines, forfeitures, etc., under the procedure indicated above, shall have been directed for use in supplementing items in the Current Expense Budget for which State funds are provided.

We appreciate the desire of the County Superintendent and of the Board of Education to provide for the operation of the schools of the county according to standards higher than is possible by the use of State funds alone for current expenses in the conduct of the school program. If the qualified voters share this desire, the procedure is provided whereby supplemental funds may be authorized for such purpose and provided through county ad valorem taxation. G.S. 115-361, G.S. 115-363.

The judgment of the court below requires that the County Commissioners levy a tax for the school year 1953-54 sufficient to provide a Current Expense fund in the amount of $112,400.00 and a Capital Outlay fund in the amount of $47,000.00. In view of what has been stated above, it would seem that the failure of the court below to add, "less such part of these amounts as is available for Maintenance of Plant and Fixed Charges in the county school fund, derived from fines, forfeitures and other sources, specified in G.S. 115-356," resulted in a judgment more favorable to the Board of Education than that to which it was entitled. In any event, no error of law prejudicial to the Board of Education has been made to appear. Therefore, the judgment of the court below will be

Affirmed.