DUPLIN COUNTY BOARD OF EDUCATION, PLAINTIFF v. DUPLIN COUNTY BOARD OF COUNTY COMMISSIONERS DEFENDANT

No. COA09-397

(Filed 17 November 2009)

**1. Schools and Education— amount of money for fiscal year— subject matter jurisdiction**

The trial court had subject matter jurisdiction over an action involving county appropriations for a school board where the board triggered a statutory process by resolving that the appropriated amount was insufficient, defendant appropriated an additional amount during the mediation that was part of that statutory process, and defendant then argued that the process must begin again. There is a clear legislative preference for speedy resolutions of school budget disputes.

**2. Constitutional Law— statute—constitutionality on face and as applied**

Although defendant county commissioners contended that the statute which authorized plaintiff school board's suit regarding the budget was unconstitutional on its face or as applied, defendant conceded that the decision in *Beaufort Cnty. Bd of Educ. v. Beaufort Cnty. Bd. of Comm'ns*, 363 N.C. 500, was determinative and resolved the issues in favor of plaintiff.

3. **Schools and Education— directed verdict—sufficiency of evidence—amount to maintain school system—amount needed from county**

   The trial court did not err by denying defendant county commissioner's motions for directed verdict in a school funding case. Defendant contended that plaintiff was required to present evidence of the sources of funding that were under the control of the county commissioners for maintaining a system of free public schools, but the jury was concerned only with the adequacy of the county appropriation, not with the sufficiency of funds provided by other sources.

4. **Schools and Education— sufficiency of funds—sufficiency of evidence**

   *Beaufort Cnty. Bd of Educ. v. Beaufort Cnty. Bd. of Comm'ns*, 363 N.C. 500, expressly rejected the contention in this case that a judgment against the Board of Commissioners should be vacated because the school board did not present sufficient evidence that the school appropriation was not sufficient for statutory categories.

5. **Appeal and Error— jurisdiction of Court of Appeals— instruction issue not raised at trial or on appeal**

   The Court of Appeals does not have the same broad remedial powers granted to the North Carolina Supreme Court, and had no jurisdictional authority to grant to appellants the same remedy granted in *Beaufort Cnty. Bd of Educ. v. Beaufort Cnty. Bd. of Comm'ns*, 363 N.C. 500.

Appeal by Defendant from judgment entered 9 October 2008 by Judge Thomas D. Haigwood in Duplin County Superior Court. Heard in the Court of Appeals 1 October 2009.

*Schwartz & Shaw, P.L.L.C., by Brian C. Shaw and Richard Schwartz, for Plaintiff-Appellee.*

*The Yarborough Law Firm, P.A., by Garris Neil Yarborough; and Wendy Sivori, for Defendant-Appellant.*

BEASLEY, Judge.

Defendant appeals from a judgment ordering appropriation of $4,795,784.00 to the Plaintiff's local current expense fund. For reasons stated below, we affirm.

This appeal arises from a dispute between Defendant (Duplin County Board of County Commissioners) and Plaintiff (Duplin County Board of Education) over the amount of money that Defendant appropriated to Plaintiff for the 2008-2009 Fiscal Year (FY 2009). On 28 April 2008 Plaintiff submitted its FY 2009 budget request to Defendant. On 16 June 2008 Defendant adopted a budget ordinance that appropriated to Plaintiff an amount less than its budget request. Two days later Plaintiff adopted a resolution stating that the amount appropriated to Plaintiff for local current expense and capital outlay was insufficient to support a system of free public schools in Duplin County. Plaintiff informed Defendant of its resolution and requested mediation of the budget dispute. The parties selected a mediator, who presided over a joint public meeting on 23 June 2008. The parties did not resolve their dispute at this public meeting, and conducted further mediation sessions during June and July, 2008. The mediation ended on 1 August 2008 without an agreement.

On 6 August 2008 Plaintiff filed suit against Defendant, seeking "(a) determination of the amount(s) of money needed from sources under the control of the Duplin County Board of Commissioners to maintain a system of free public schools, and (b) a judgment ordering the Board of Commissioners to appropriate such additional amount(s) to the Duplin County school administrative unit[.]" Following a jury trial in September 2008, judgment was entered awarding Plaintiff $4,795,784.00 to its local current expense fund. From this judgment Defendant appeals.

---

**[1]** Defendant argues first that the judgment should be vacated on the grounds that the trial court lacked subject matter jurisdiction over the parties' controversy. Defendant asserts that subject matter jurisdiction was defeated "due to the sovereign immunity of the Defendant" and due to "Plaintiff's failure to comply with the procedures of the specific statutory exemption to that immunity."

Defendant argues elsewhere that N.C. Gen. Stat. § 115C-431 is unconstitutional on its face or as applied. However, Defendant does not dispute that N.C. Gen. Stat. § 115C-431 gives the trial court general subject matter jurisdiction over a suit to resolve a budget dispute between a county board of education and board of county commissioners. Defendant instead argues that the trial court was deprived of subject matter jurisdiction by Plaintiff's failure to comply with the requirements of N.C. Gen. Stat. § 115C-431 (2007), which provides in pertinent part that:

(a) If the board of education determines that the amount of money appropriated to the local current expense fund, or the capital outlay fund, or both, by the board of county commissioners is not sufficient to support a system of free public schools, the chairman of the board of education and the chairman of the board of county commissioners shall arrange a joint meeting of the two boards to be held within seven days after the day of the county commissioners' decision on the school appropriations.

Prior to the joint meeting, the Senior Resident Superior Court Judge shall appoint a mediator unless the boards agree to jointly select a mediator. The mediator shall preside at the joint meeting and shall act as a neutral facilitator of disclosures of factual information, statements of positions and contentions, and efforts to negotiate an agreement settling the boards' differences.

At the joint meeting, the entire school budget shall be considered carefully and judiciously, and the two boards shall make a good-faith attempt to resolve the differences that have arisen between them.

(b) If no agreement is reached at the joint meeting of the two boards, the mediator shall, at the request of either board, commence a mediation immediately or within a reasonable period of time. . . .

Unless both boards agree otherwise, or unless the boards have already resolved their dispute, the mediation shall end no later than August 1. The mediator shall have the authority to determine that an impasse exists and to discontinue the mediation. .... If no agreement is reached, the mediator shall announce that fact to the chairs of both boards, the Senior Resident Superior Court Judge, and the public. . . .

(c) Within five days after an announcement of no agreement by the mediator, the local board of education may file an action in the superior court division of the General Court of Justice. The court shall find the facts as to the amount of money necessary to maintain a system of free public schools, and the amount of money needed from the county to make up this total. Either board has the right to have the issues of fact tried by a jury. When a jury trial is demanded, the cause shall be set for the first succeeding term of the superior court in

the county, and shall take precedence over all other business of the court. . . . The issue submitted to the jury shall be what amount of money is needed from sources under the control of the board of county commissioners to maintain a system of free public schools.

All findings of fact in the superior court, whether found by the judge or a jury, shall be conclusive. When the facts have been found, the court shall give judgment ordering the board of county commissioners to appropriate a sum certain to the local school administrative unit, and to levy such taxes on property as may be necessary to make up this sum when added to other revenues available for the purpose.

(d) An appeal may be taken to the appellate division of the General Court of Justice, and notice of appeal shall be given in writing within 10 days after entry of the judgment. All papers and records relating to the case shall be considered a part of the record on appeal. . . .

Defendant directs our attention to the first sentence of § 115C-431(a), providing that "[i]f the board of education determines that the amount of money appropriated to the local current expense fund, or the capital outlay fund, or both, by the board of county commissioners is not sufficient to support a system of free public schools," then the parties shall participate in a joint meeting and mediation sessions, in an effort to reach agreement.

Defendant concedes that, following the adoption of its 16 June 2008 budget ordinance, Plaintiff on 18 June 2008 adopted a resolution that the amount appropriated to Plaintiff for local current expense and capital outlay was insufficient to support a system of free public schools in Duplin County. It is also undisputed that Plaintiff and Defendant took part in a joint public meeting and several mediation sessions but failed to reach an agreement, and that the mediator then informed the proper parties that Defendant and Plaintiff were at an impasse. Additionally, Defendant does not dispute that Plaintiff complied with the time limits of § 115C-431(c), by filing its complaint "[w]ithin five days after an announcement of no agreement by the mediator[.]" Therefore, we conclude that Plaintiff complied with all the applicable statutory requirements.

Defendant, however, argues that, regardless of Plaintiff's initial adherence to the statutory requirements, the trial court was stripped

of subject matter jurisdiction by Defendant's appropriation of additional funds during the mediation sessions. The mediation sessions were conducted after Plaintiff adopted a resolution that the money provided by Defendant was insufficient, but before Plaintiff filed suit on 6 August 2008. During this time, Defendant appropriated an additional $800,000 to Plaintiff's current expense fund, and $1,010,203 to Plaintiff's capital outlay fund for repair and maintenance. This additional appropriation fully funded Plaintiff's budget request for capital outlay repair and maintenance expenses, but did not fully fund Plaintiff's requested current expenses fund, and did not provide any funds for Plaintiff's requested capital construction fund.

Defendant's position is that its appropriation of additional funds towards Plaintiff's requested budget rendered Plaintiff's resolution ineffective. Defendant contends that Plaintiff was required to undertake a formal reconsideration of its needs and to adopt another formal resolution that the funds appropriated were insufficient. Defendant asserts that this renewed assessment is a prerequisite to the court's jurisdiction over the parties' budget dispute. We disagree, for several reasons.

"It is axiomatic that '[w]hen the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required.'" *Harrell v. Bowen*, 362 N.C. 142, 145, 655 S.E.2d 350, 352 (2008) (quoting *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006)). In this case, § 115C-431 does not state that a school board's formal resolution, determining that county funding is insufficient, is a jurisdictional prerequisite for a later civil case. Rather, the statute plainly states that a school board's decision that the county has appropriated insufficient funds shall be followed by statutorily defined attempts to resolve the parties' budgetary dispute. If the school board and the board of commissioners fail to reach an agreement, the mediator will inform the appropriate parties. It is this determination by the mediator, establishing that the parties are at an impasse, which triggers a board's right to file suit.

It is also significant that the provisions of N.C. Gen. Stat. § 115C, Article 31, "The School Budget and Fiscal Control Act," consistently impose strict time limits on the budgetary process. *See, e.g.*, N.C. Gen. Stat. § 115C-427(b) (2007) (school board superintendent must submit requested budget to school board no later that May 1); N.C. Gen. Stat. § 115C-429(a) (2007) (school board must submit budget to county commissioners no later than May 15); N.C. Gen.

Stat. § 115C-429(b) (2007) (county commissioners must complete action on school budget by July 1); N.C. Gen. Stat. § 431(a) (2007) (if school board determines that county funding is inadequate, joint public meeting shall be held within seven days of county's decision on school appropriations); N.C. Gen. Stat. § 115C-431(b) (2007) (mediation generally ends by August 1); N.C. Gen. Stat. § 115C-431(c) (2007) (school board must file suit within five days of mediator's announcement that the parties have reached an impasse; calendering of a requested jury trial "shall take precedence over all other business of the court").

"This statute, read as a whole, sets forth a detailed procedure for school budget disputes to be resolved as quickly as possible." *Beaufort Cty. Bd. of Educ. v. Beaufort Cty. Bd. of Comm'rs*, 188 N.C. App. 399, 408, 656 S.E.2d 296, 303 (2008), *rev'd on other grounds*, *Beaufort Cty. Bd. of Educ. v. Beaufort Cty. Bd. of Comm'rs*, 363 N.C. 500, 681 S.E.2d 278 (2009). In the context of this clear preference for speedy resolution of budget disputes, we note that the interpretation of N.C. Gen. Stat. § 115C-431 urged by Defendant would permit a board of county commissioners to postpone resolution of a budget debate indefinitely, simply by continuing to appropriate additional small sums to the board of education, requiring the board of education to repeat its determination of funding inadequacy and, presumably, repeat its mediation efforts as well.

"It is well settled that 'in construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results.'" *State v. Jones*, 359 N.C. 832, 837-38, 616 S.E.2d 496, 499 (2005) (*quoting State ex rel. Comm'r of Ins. v. N.C. Auto. Rate Admin. Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978)). Accordingly, " '[a]n unnecessary implication arising from one [statutory] section, inconsistent with the express terms of another on the same subject, yields to the expressed intent.'" *Wake Cares, Inc. v. Wake Cty. Bd. of Educ.*, 363 N.C. 165, 172, 675 S.E.2d 345, 351 (2009) (quoting *Bd. of Educ. v. Bd. of Cty. Comm'rs*, 240 N.C. 118, 126, 81 S.E.2d 256, 262 (1954)).

We conclude that Plaintiff complied with the appropriate statutory requirements, and that the trial court was not deprived of subject matter jurisdiction when Defendant appropriated an additional sum to Plaintiff. This assignment of error is overruled.

**[2]** Defendant argues next that the judgment must be vacated on the grounds that the statute authorizing Plaintiff's suit, N.C. Gen. Stat. § 115C-431 (2007) is "unconstitutional on its face or . . . unconstitutional as applied[.]" The Supreme Court of North Carolina recently issued its decision in *Beaufort County Bd. of Educ. v. Beaufort County Bd. of Comm'rs*, 363 N.C. 500, 681 S.E.2d 278 (2009). In *Beaufort*, the Court rejected similar constitutional challenges to N.C. Gen. Stat. § 115C-431. The defendant in *Beaufort* argued "that the statutory procedure in section 431(c) [] violates the constitutional requirement [of N.C. Const. art. I, § 6] that '[t]he legislative, executive, and supreme judicial powers of the State government shall be forever separate and distinct from each other.' " *Id.* at 502, 681 S.E.2d at 281. The Court rejected this argument, and held that:

> The State Board of Education (the State Board) is given the general administrative and supervisory role over public education[.] . . . The statutory provisions enacted by the legislature and guidelines adopted by the State Board, when viewed together, comprehensively define the phrase "a system of free public schools" used in section 431(c). Since the General Assembly has so exhaustively defined its desired [school] system, the section 431(c) procedure does no more than invite the courts to adjudicate a disputed fact: the annual cost of providing a countywide system of education under the policies chosen by the legislature and the State Board. . . . After finding the facts, the trial court enters judgment against the county commission[.] . . . It is the legislature, not the judiciary, which has assigned responsibility to local government by requiring that judgment be entered against the county commission if the court finds the cost of schooling is greater than the amount appropriated. The legislature has therefore neither assigned policy-making power to the courts nor otherwise delegated its authority, and the judiciary is at all times exercising a function traditionally assigned to it under our tripartite system of government.
>
> . . . .
>
> The provisions of section 431(c) thus comport with the State Constitution, and any complaints about the policy or wisdom of the challenged procedures must necessarily be directed to the General Assembly.

*Id.* at 503-05, 681 S.E.2d at 281-82. In the instant case, Defendant incorporated by reference the arguments of the defendant in

*Beaufort*, and concedes that the "decision in the *Beaufort* case should be determinative of the constitutional issues raised herein[.]" We agree, and hold that the *Beaufort* decision resolves these issues in favor of Plaintiff. This assignment of error is overruled.

---

**[3]** Defendant argues next that the trial court committed reversible error by denying Defendant's motions for directed verdict, made at the end of the Plaintiff's evidence and the end of all evidence. Defendant contends that it was entitled to a directed verdict in its favor, on the grounds that the Plaintiff failed to present evidence of "what sources [of funding] are under the control of the Board of County Commissioners to maintain a system of free public schools" which Defendant characterizes as "a key element of its statutory cause of action[.]" Defendant contends that § 115C-431(c) mandates that Plaintiff must offer, as a "critical element" of its claim, "evidence of the financial resources of the county board of commissioners, and arguably other demands thereon[.]" We disagree.

Under § 115C-431(c), if a school board files suit against the board of county commissioners:

> The court shall find the facts as to the amount of money necessary to maintain a system of free public schools, and the amount of money needed from the county to make up this total. Either board has the right to have the issues of fact tried by a jury. . . . The issue submitted to the jury shall be what amount of money is needed from sources under the control of the board of county commissioners to maintain a system of free public schools.

N.C. Gen. Stat. § 115C-431 is titled "Procedure for resolution of dispute between board of education and board of county commissioners." The statute is restricted to budget conflicts occurring at a county level, and does not address funding disputes between a local school board and a state or federal department or agency. This limitation is articulated in the statute's directive to the trial court to find "the amount of money necessary to maintain a system of free public schools, and the amount of money needed from the county to make up this total" and is emphasized in the statute's provision that, if the claim is tried before a jury, "[t]he issue submitted to the jury shall be what amount of money is needed from sources under the control of the board of county commissioners to maintain a system of free public schools." (emphasis added). In other words, the jury is charged with determining the amount of money needed by the local school

board. The phrase "from sources under the control of the board of county commissioners" modifies or describes "amount of money" and emphasizes that the jury is concerned only with the adequacy of the county appropriation, and not with the sufficiency of funds provided by the state or federal governments, or other sources. We conclude that, under § 115C-431(c), a school board must present evidence of (1) the amount of money it needs to maintain its school system, and (2) the amount it needs from the county in order to have the necessary amount. This assignment of error is overruled.

---

**[4]** Defendant next argues that judgment should be vacated, on the grounds that Plaintiff failed to present evidence showing that Defendant "had not provided sufficient funds to the statutorily specified categories for which the county commissioners may be obligated to fund." We disagree.

Defendant concedes that our decision on this argument "is contingent upon the Court's ruling on prior issues in this case." Specifically, Defendant acknowledges that we would reach this issue only if we first found that § 115C-431 "constitutional as applied, only if it relates to certain specific statutorily [sic] categories of funding." This argument was expressly rejected in *Beaufort County*, 363 N.C. at 507, 681 S.E.2d at 284. ("We therefore reject the argument that the General Assembly has not assigned responsibility for current expenses to local governments."). This assignment of error is overruled.

---

**[5]** Due to the timing of this appeal, the parties did not have the benefit of the Supreme Court of North Carolina's decision in *Beaufort*. In *Beaufort*, the Court invoked its general supervisory authority over lower courts provided for in Article IV, Section 12 of the North Carolina Constitution and addressed an issue not briefed by the parties: the trial court's instruction to the jury defining the word "needed" in the jury's determination of the amount of money needed to maintain the county school system. The Court held that:

> The trial court instructed the jury that the word "needed" in section 431(c) means "that which is reasonable and useful and proper or conducive to the end sought." Rather than conveying a restrictive definition of "needed," . . . the instruction conveyed an impermissible, expansive definition of this statutory term. Because the instruction was in error, we must remand for a new trial. At that trial, the trial court should instruct the jury that sec-

tion 431(c) requires the County Commission to provide that appropriation legally necessary to support a system of free public schools, as defined by Chapter 115C and the policies of the State Board. The trial court should also instruct the jury, in arriving at its verdict, to consider the educational goals and policies of the state, the budgetary request of the local board of education, the financial resources of the county, and the fiscal policies of the board of county commissioners.[1]

*Id.* at 507, 681 S.E.2d at 283.

The jurisdiction of the Supreme Court of North Carolina is conferred and defined by the constitution and not by the North Carolina General Assembly. *State ex rel. N.C. Utilities Commission v. Old Fort Finishing Plant*, 264 N.C. 416, 142 S.E.2d 8 (1965). However, the North Carolina Court of Appeals' jurisdiction under Article IV, Section 12 is limited to "appellate jurisdiction as the General Assembly may provide." The General Assembly has not granted to the North Carolina Court of Appeals general supervisory jurisdiction over the lower courts. Therefore, our court does not have broad remedial powers granted to the Supreme Court of North Carolina. Consequently, we have no jurisdictional authority to grant to the Appellants the same remedy granted in *Beaufort* regarding the jury instruction. As a result, since the jury instruction issue was not raised at trial or on appeal, we have no jurisdiction to remedy any defect therein. We must affirm the decision of the trial court.

Affirmed.

Judges CALABRIA and HUNTER, Jr. concur.

---

1. *Beaufort* does not state whether, in a trial brought under § 115C-431(c), evidence must be introduced regarding "the educational goals and policies of the state, the budgetary request of the local board of education, the financial resources of the county, and the fiscal policies of the board of county commissioners." Nor does the opinion indicate the respective responsibilities of Plaintiff and Defendant for production of such evidence.